United States District Court
Southern District of Texas
**ENTERED**
January 25, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| GREGG BARTHELMAN, | § | |
| (TDCJ #02022623), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:21-00146 |
| | § | |
| BOBBY LUMPKIN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| | § | |
| Respondent. | § | |

## <u>REPORT & RECOMMENDATION</u>

Petitioner, Gregg Barthelman, a state prisoner proceeding *pro se*, initiated this action in April 2021 by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b). On September 9, 2021, Respondent filed a Motion for Summary Judgment. (Dkt. No. 7.) On October 12, 2021, Petitioner filed Petitioner's Response to Respondent's Answer to Petitioners [sic] 2254 Case ("Petitioner's Response"). (Dkt. No. 9.)

Petitioner seeks review of being found guilty by a jury in Hidalgo County, Texas, of one count of Possession with the Intent to Promote Child Pornography and fourteen counts of Possession of Child Pornography in August 2015, and his subsequent cumulative sentence to 48 years' imprisonment. *See* Dkt. No. 8-48 at 36-56; Dkt. No. 8-49 at 1-24. Petitioner seeks review at this stage based on claims that (1) the Appellate Court erred in affirming Petitioner's conviction

on count one regarding the promotion of child pornography, (2) the jury was not shown the visual items alleged in counts 13, 14, and 15, (3) the State did not prove Petitioner was aware of the contents of any of the exhibits, (4) the Appellate Court erred in finding the failure to give a reasonable doubt jury charge was not harmless error, (5) the Appellate court reversibly erred by finding Tony Schmidt's testimony[1] was harmless, (6) the court and Petitioner's previous attorneys did not notify Petitioner that the Court of Criminal Appeals refused his PDR, (7) ineffective assistance of trial counsel, (8) the trial judge was biased, (9) prosecutorial misconduct, and (10) police seized evidence without a warrant and in violation of Petitioner's constitutional rights. (Dkt. No. 1 at 5, 7, 8, 10, 16-20; Dkt. No. 1-1 at 23.)

Respondent argues that the claims are time-barred from habeas review (Dkt. No. 7); Petitioner claims they are not and seeks federal habeas review (Dkt. No. 9).

After carefully reviewing the filings, record, and relevant law, and for the reasons set forth below, the claims are time-barred from review; therefore, the undersigned recommends that Respondent's Motion for Summary Judgment (Dkt. No. 7) be **GRANTED**.   It is further recommended that Petitioner's § 2254 petition (Dkt. No. 1) be **DENIED** and this cause of action be **DISMISSED** with prejudice.

Finally, it is further recommended that the District Court **DECLINE** to issue a Certificate of Appealability in this matter.

### BACKGROUND

#### I. Criminal Prosecution and Procedural History

##### a. Allegations & Circumstances of Prosecution

The state appellate court appropriately summarized the facts of the prosecution against

---

[1] Tony Schmidt made a victim impact statement alleging he saw Petitioner producing child pornography. *See* Dkt. No. 8-17 at 33-34.

Barthelman as follows[2]:

      Barthelman, a retired teacher, leased a self-storage unit from the Best Little Warehouse in Texas located in Edinburg.   Pursuant to this lease agreement, Barthelman paid the storage facility monthly rent in order to lease the unit. In April of 2012, Barthelman had defaulted on several monthly rent payments and was given the option of paying the past-due rental charges or have the contents that were stored in the unit sold at public auction.  *See generally* TEX. PROP. CODE ANN. §§ 59.001–.047 (West, Westlaw through 2015 R.S.) (Self-Service Storage Facility Liens).   After receiving no response from Barthelman, employees of the facility proceeded forward with the public sale of the contents of Barthelman's storage unit, known as Unit Number 76.

      At the public sale, Roland Villarreal purchased the contents of the unit because "things [inside of it] ... caught [his] attention"; things that he could later resell in a yard sale.   After the purchase, Villarreal was tasked with cleaning out the storage unit within forty-eight hours.   After loading all of the contents from the storage unit into his vehicle, Villarreal took the items to his home and sorted through them.   Once at home, Villarreal discovered various photographs of nude children located on "probably five or six" cameras purchased from Barthelman's storage unit.  Upon making this discovery, Villarreal called the Edinburg Police Department to report what he found.

      Officer Jose Lara first responded to Villarreal's call.   Upon arriving at Villarreal's residence, Officer Lara reviewed two nude photos of "a naked young man, not more than ... 12 years old" and referred the case to the criminal investigation department of the Edinburg Police Department.   Edinburg police investigators processed various items found at Villarreal's home, including SD cards containing photographs and other miscellaneous items such as mail, bank statements, and retirement paperwork all in Barthelman's name.   After examining the relevant evidence recovered, police focused their investigation on Barthelman.

      Edinburg police, with the assistance of the Federal Bureau of Investigation, conducted an in-depth analysis of various electronic storage devices, including an SD card and a USB drive.   In this examination of evidence, police uncovered thousands of images of male and female children posing nude.   The FBI sent these images to the National Center for Missing and Exploited Children (NCMEC) to analyze the images with their database of photos.   According to FBI Special Agent Brian Hamilton, the NCMEC confirmed four known victims of child pornography in the images it analyzed for the FBI.

*Barthelman v. State*, No. 13-15-00576-CR, 2016 WL 5941867, at *1–2 (Tex. App. Oct. 13, 2016).

---

[2] *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

### b. **Appeal**

Upon his conviction and sentence,[3] Petitioner timely filed an appeal with the Thirteenth Court of Appeals in Corpus Christi-Edinburg on March 21, 2016.  (Dkt. No. 8-16.)  On October 13, 2016, the trial court's judgment was affirmed.  (Dkt. Nos. 8-3, 8-4); *see also Barthelman*, 2016 WL 5541867, at *1.  On November 4, 2016, Petitioner's motion for rehearing and motion for rehearing en banc were denied.  (Dkt. Nos. 8-9, 8-10.)  On November 23, 2016, Petitioner filed a petition for discretionary review.  (Dkt. No. 8-18.)  On February 1, 2017, the Petitioner's PDR was refused.  (Dkt. No. 8-6.)  On May 2, 2017, ninety days after Petitioner's PDR was refused, his conviction became final.  *See* 28 U.S.C. § 2244(d)(1)(A); *see also* U.S. Sup. Ct. R. 13(1).  Petitioner did not file an application for state writ of habeas corpus between May 2, 2017 and May 2, 2018.  On February 25, 2019, the Texas Court of Criminal Appeals received a letter from Petitioner inquiring about the status of the PDR.  (Dkt. No. 8-20.)  On March 1, 2019, Petitioner received a letter from the Texas Court of Criminal Appeals, dated February 25, 2019, notifying him of the PDR denial.  (Dkt. No. 1-2 at 4.)  Petitioner argues this letter was the first time he was notified of the PDR's denial.  (Dkt. No. 1 at 13-14.)

About a year later, on February 20, 2020, Petitioner filed an Application for a Writ of Habeas Corpus pursuant to art. 11.07 of the Texas Code of Criminal Procedure (Dkt. No. 8-49 at 80-105) and a handwritten memorandum (*id.* at 55-79) in support of said application.  Petitioner also sought to recuse the trial judge from the matter (Dkt. No. 8-49 at 106), but said request was

---

[3] The jury found Petitioner guilty of Possession with Intent to Promote Child Pornography and assessed a punishment of the maximum sentence of 20 years.  *See* Dkt. No. 8-48 at 37; *Barthelman*, 2017 WL 594167, at *1.  On counts 2 through 15, each a count for Possession of Child Pornography, the jury found Petitioner guilty and assessed a punishment of 2 years for each of the fourteen counts alleged.  *See* Dkt. No. 8-48 at 39-56; *Barthelman*, 2017 WL 594167, at *1.  The District Court of Hidalgo County stacked the cases, resulting in Petitioner's sentence of 48 years' imprisonment.  *Barthelman*, 2017 WL 594167, at *1.

denied on March 23, 2020 (*id.* at 124-25).[4]   On May 24, 2020, the trial judge initially recommended to the Court of Criminal Appeals that the writ be dismissed due to Petitioner's use of an outdated form.  *Id.* at 133-36.   In May of 2020, Petitioner filed a second or amended writ on a new, updated form that was received by the Hidalgo County Clerk's Office on June 16, 2020.  The Petitioner set out the same claims as set forth in the first petition and included the tenth ground, that the evidence was seized by police without a warrant.  *See* Dkt. No. 8-51 at 111-79; *Cf.* Dkt. No. 8-49 at 80-105.[5]   Since the first petition was still pending before the Court of Criminal Appeals, on August 3, 2020, the trial judge recommended the second petition be dismissed as prematurely filed.  (Dkt. No. 8-51 at 191-97).   With both writs pending, on September 16, 2020, the Court of Criminal Appeals ordered the trial court to develop the facts regarding the claims contained within the first petition that Petitioner's trial counsel was ineffective in their representation.  (Dkt. Nos. 8-40 at 2, 8-46.)   On September 16, 2021, the trial judge issued a Findings of Fact, Conclusions of Law, Recommendation and Order in which she recommended that the writ be denied as the claims of ineffective assistance of counsel were without merit.  (Dkt. No. 8-47 at 73-77.)   On March 31, 2021, the Texas Court of Criminal Appeals followed the recommendation of the trial court and denied the first writ "without written order on findings of trial court without hearing and on the court's independent review of the record."  (Dkt. No. 8-39.)

---

[4]  The prosecution and trial were in the 206th District Court, Hidalgo County, Texas, before the Honorable District Court Judge Rose Guerra Reyna.

[5]  The original nine grounds are as follows: (1) "The state's incorrect statement of law for promotion in count one violates defendant's due process" and "evidence failed to prove the defendant committed the offense beyond a reasonable doubt"; (2) "The jury was not shown the visual items alleged in Counts 13, 14, 15, which is fundamental reversible error"; (3) "The state did not prove Defendant was aware of the contents of any of the exhibits"; (4) the state appellate court erred in finding that the trial court's failure to provide the reasonable doubt charge for 'an extraneous offense' was harmless error; (5) the state appellate court erred in finding Tony Schmidt's testimony harmless; (6) "Petitioner was not informed by the Court nor by Appellate Counsel that his P.D.R. was refused"; (7) trial counsel was ineffective; (8) the trial judge was bias; and (9) there was prosecutorial misconduct.  Dkt. No. 8-49 at 85, 87, 89, 91, 93, 98, 100, 102, and 104.

The second writ was denied without written order.   (Dkt. No. 8-50.)

Petitioner filed a federal habeas corpus petition on April 15, 2021; however, Petitioner placed the federal habeas petition into the prison mailing system on April 13, 2021.[6]   (Dkt. No. 1 at 15.)

## II. Summary of the Pleadings

Petitioner asserts ten grounds in his § 2254 petition (Dkt. No. 1) and Memorandum of Law in Support of Application for Art. 2254 Writ for Habeas Corpus (Dkt. No. 1-1).   First, Petitioner claims the Appellate Court erred in affirming Petitioner's conviction on count one regarding promotion of child pornography.   (Dkt. No. 1 at 5; Dkt. No. 1-1 at 5-6.)   Second, Petitioner claims the jury was not shown the visual items alleged in counts 13, 14 and 15, which, according to Petitioner, is a "fundamental reversible error."   (Dkt. No. 1 at 7; Dkt. No. 1-1 at 6-7.)   Third, Petitioner argues the State did not prove Petitioner was aware of the contents of any of the exhibits.   (Dkt. No. 1 at 8; Dkt. No. 1-1 at 7-8.)   Fourth, Petitioner argued the Appellate Court erred in finding the failure to give a reasonable doubt jury charge was harmless error.   (Dkt. No. 1 at 10; Dkt. No. 1-1 at 8-9.)   Fifth, that the Appellate Court reversibly erred by finding Tony Schmidt's testimony was harmless.   (Dkt. No. 1 at 16; Dkt. No. 1-1 at 9-10.)   Sixth, the court and Petitioner's previous state appellate attorneys did not notify Petitioner that the Court of Criminal Appeals refused his PDR.   (Dkt. No. 1 at 17; Dkt. No. 1-1 at 10-11.)   Seventh, Petitioner raises an ineffective assistance of trial counsel argument based on trial counsel's lack of investigations, failure to appear at key hearings, unpreparedness for trial, using voir dire questions that prejudiced

---

[6] Petitioner signed on April 12 that he would submit the petition to officials on April 13, 2021.   (Dkt. No. 1 at 15.)   Federal habeas petitions follow the prison mailbox rule, where the petition is deemed filed when the *pro se* prisoner submits the petition to prison authorities.   *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013).   The envelope stamp says April 15, which is the day the District Court received the petition, but the date of filing for this habeas review is April 13, 2021.   *See* Dkt. No. 1-3.

the jury before trial, and unkept promises regarding Petitioner's trial.   (Dkt. No. 1 at 18; Dkt. No. 1-1 at 12-18.)   Eighth, Petitioner alleges the trial judge was biased.   (Dkt. No. 1 at 19; Dkt. No. 1-1 at 19-20.)   Ninth, Petitioner alleges prosecutorial misconduct.   (Dkt. No. 1 at 20; Dkt. No. 1-1 at 21-22.)   Last, Petitioner claims evidence seized by police was seized without a warrant and in violation of Petitioner's constitutional rights.[7]   (Dkt. No. 1-1 at 23-32.)

On September 9, 2021, Government submitted Respondent's Motion for Summary Judgment with Brief in Support.   (Dkt. No. 7.)   Government first acknowledges that Petitioner exhausted his state court remedies and the petition is not successive, citing 28 U.S.C. §§ 2254(b)(1), 2244(b).   *Id.* at 6.   Government argues, however, that Petitioner is barred by the AEDPA's[8] limitations period pursuant to 28 U.S.C. § 2244(d).   *Id.*   Government states, "The record does not reflect that any unconstitutional 'State action' impeded Barthelman from filing for federal habeas corpus relief prior to the end of the limitations period," citing 28 US.C. § 2244(d)(1)(B).   *Id.* at 8.   Government also asserts that Barthelman "has not shown that he could not have discovered the factual predicate of his claims until after his conviction became final," citing 28 U.S.C. § 2244(d)(1)(D).   *Id.* at 9.   "Finally, the claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review."   *Id.* (citing 28 U.S.C. § 2244(d)(1)(C)).   "Accordingly, the one-year limitations period for Barthelman's petition runs from the date on which the judgment became

---

[7] Of note, the third and tenth claims were also argued on direct appellate review before the Court of Appeals.  *See* Dkt. No. 8-3 at 6, 11-12 and 15; *see also Barthelman*, 2016 WL 5941867, at *3, *5, and *6. Claim of ineffective assistance of counsel was also argued, but it pertained to trial counsel's failure to object to evidentiary matters as well as to the conviction and sentence.  *See* Dkt. No. 8-3 at 23; *see also Barthelman*, 2017 WL 594167, at *10.

[8] AEDPA is the well-recognized acronym for the Antiterrorism and Effective Death Penalty Act of 1996. *See* Pub. L. No. 104-132, 110 Stat. 1214 (1996).   Said Act sets forth the limitation period that is at issue in this habeas matter.

final by the conclusion of direct review or the expiration of the time for seeking such review."
(Dkt. No. 7 at 9 (citing 28 U.S.C. § 2244(d)(1)(A)).

Government first addresses statutory tolling.  Government states Petitioner "did not toll
the limitations period by filing an application for state writ of habeas corpus between May 2, 2017[9]
and May 2, 2018."  (Dkt. No. 7 at 9.)  "Absent tolling, the one-year limitation period for filing a
federal petition expired one year later, on May 2, 2018."  *Id.*  Government submits that "the
instant petition, filed April 13, 2021, is 1,078 days late."  *Id.*  In response to Petitioner's
contention that he was not aware the PDR was denied until March 1, 2019, the Government
addresses equitable tolling, arguing Petitioner "does not provide any evidence for his claims that
'attorneys and court failed to notify [him] of the ruling,' and '[f]rom January 2017 to February
2019 . . . [he] wrote letters and cards to attorneys' but received no reply."  *Id.* at 11.

Government further argues that even if Petitioner did not know the result of the PDR
petition until March 1, 2019 and could reach his burden of demonstrating equitable tolling is
warranted, the "one-year limitation period for filing a federal petition would have expired one year
later on March 1, 2020."  *Id.*  The Government asserts that if the state applications tolled the
limitations period between February 20, 2020 and March 31, 2021, Barthelman then had until
April 12, 2021 to file–405 days from March 1, 2020 and accounting for the filing date ending on
a weekend.  (Dkt. No. 7 at 11.)  Accordingly, when Barthelman filed the federal petition on April
13, 2021, the federal petition, even with the equitable tolling, would have been one day late.  *Id.*

Government then presents arguments against Petitioner's entitlement to equitable tolling,
setting forth that Petitioner fails to demonstrate either of the elements to warrant equitable tolling,
diligence or extraordinary circumstances.  *Id.* at 11.  Government only addresses the first prong

---

[9] As noted, May 2, 2017 is the date in which Petitioner's conviction became final ninety days after his
petition for discretionary review was refused on February 1, 2017.  *See* 28 U.S.C. § 2244(d)(1)(A).

of equitable tolling—diligence.  *Id.* at 11-13.   Government argues Barthelman was not diligent in obtaining the status of his state proceedings because he "waited over two years after his PDR had been filed to inquire after the result."  *Id.* at 12.   "Then, Barthelman waited nearly an entire year to file his first state writ application."  *Id.*   To conclude, Government asserts that since Petitioner's petition is untimely under AEDPA and Petitioner is not entitled to equitable tolling, Government asks that the petition be dismissed with prejudice and that no certificate of appealability issue.  (Dkt. No. 7 at 13.)

On October 12, 2021, Petitioner filed Petitioner's [Response] to Respondent's Answer to [Petitioner's] 2254 Case.  (Dkt. No. 9.)   In it, Petitioner contends he meets the requirements for equitable tolling, because he demonstrated due diligence and was facing extraordinary circumstances in his attempts to file both state and federal habeas claims.  *Id.* at 12.   Petitioner lists several factors affecting his ability to file writs: (1) no access to information about the filing requirements, time frames to said filings, or instructions on how to do so; (2) toxic law library conditions, including outdated state and federal habeas forms and no law library help, (3) no access to copy services for exhibits or a telephone, and (4) difficulty completing filings with a work schedule resulting in drafting the petitions in "disruptive" conditions.  *Id.* at 3-4.

Petitioner then lists the ways in which he was diligent in his attempt to timely file his state and federal writs.  (Dkt. No. 9 at 4-11.)   First, Petitioner alleges that Petitioner's appellate attorneys, Mark Alexander and Pamela Alexander ("Prior Counsel"), told Petitioner the PDR could take up to two years.  *Id.* at 4.   On January 2, 2017, Prior Counsel sent a letter to Petitioner thanking him for his letters and Christmas card, notifying him that after the request for rehearing was denied, Prior Counsel asked the Texas Court of Criminal Appeals to review Petitioner's case, and Prior Counsel explained a petition for discretionary review.  (Dkt. No. 1-2 at 1.)   Prior

Counsel stated, "If they grant review, then we will prepare another brief to be considered by the Court." *Id.*   Prior Counsel then acknowledged Petitioner's request for a list of qualified attorneys for the writ process, listing four "qualified attorneys," along with their addresses. *Id.* at 1-2. Prior Counsel explained, "You will need to contact them and seek their representation." *Id.* at 1. Further, Prior Counsel explained how Petitioner might get help for completing a writ if funds are an issue. *Id.* at 2.   Prior Counsel continued, explaining how the writ process differs from the direct appeal stage and listing three rules to note when filing a writ. *Id.* at 2-3.   The first rule was to use the court's specific form, or the writ will be refused.   (Dkt. No. 1-2 at 2.)   The second was, "DO NOT BE IN A HURRY," emphasizing the need for Petitioner to get his writ correct the first time, as subsequent writs "are not favored." *Id.*   The last "rule" asserted, "In the next letter, if they refuse your P.D.R., we will fully discuss the writ process, and what issues you need to be working on." *Id.* at 3.   Prior Counsel did, however, still list issues for Petitioner's consideration to be raised in a writ, including the issues raised in his PDR and Motion for Rehearing, his ineffective assistance of counsel claims, any newly discovered evidence and any misconduct by the Court, his attorney, and the District Attorney, and advising him he may "want to make a journal with [his] memories." *Id.*   Prior Counsel ended the letter claiming, "We will be sure to write you back as soon as we hear something on your P.D.R. . . . ." *Id.*

Petitioner claims that throughout 2017, his "Edinburg friend Wayne Pieper" tried to contact people that the trial attorney did not, including Richard DeLeon.   (Dkt. No. 9 at 5.)   Petitioner did not include the letters between himself and Mr. Pieper due to a lack of access to copy services. *Id.*

Throughout 2017 and 2018, Petitioner was moved several times.   Petitioner was first moved in July of 2017 from the Garza Unit in Beeville Texas, to the Darrington Unit in Roshanon.

*Id.* at 5.   In late July 2017, Texas Department of Criminal Justice ("TDCJ") personnel moved Petitioner from the Byrd Prison Unit in Huntsville, though Petitioner does not assert where he ends up until August of 2017 wherein Petitioner alleges he was moved to the Wallace Pack Unit in Navasota, Texas.   *Id.*   Due to a heat issue, Petitioner was then moved to the Diboll Unit in late August of 2017.   *Id.*   In February of 2018, TDCJ personnel moved Petitioner from the Diboll Unit back to the Wallace Pack Unit in Navasota.   *Id.* at 6.   This is the last move Petitioner lists.

From January of 2017 until February of 2019, Petitioner claims he sent correspondence to Prior Counsel.   (Dkt. No. 9 at 5-6.)   Each time Petitioner moved, as listed above, Petitioner sent a letter to Prior Counsel informing them of the move and requesting a status update on his PDR. *Id.*   Additionally, in November of 2017, Petitioner sent a Thanksgiving Day card to Prior Counsel, also inquiring into the status of his PDR.   *Id.* at 5.   In December of 2017, Petitioner sent Prior Counsel a Christmas card and note asking for a PDR status update.   *Id.* at 6.   In January of 2018, Petitioner sent a New Year's card to Prior Counsel.   *Id.*   In November of 2018, Petitioner sent another Thanksgiving Day Card to Prior Counsel inquiring about the PDR's status.   *Id.*   In December of 2018, Petitioner again sent Prior Counsel a Christmas card.   *Id.*

In February of 2019, Petitioner wrote to the Texas Court of Criminal Appeals inquiring about the status of the PDR.   *See* Dkt. No. 9 at 6; *see also* Dkt. No. 8-20.   On March 1, 2019, Petitioner received a letter from the Court of Criminal Appeals notifying him of the PDR denial. (Dkt. No. 1-2 at 4; Dkt. No. 1 at 13-14.)   In March of 2019, Petitioner began writing to those attorneys whom Prior Counsel listed as attorneys Petitioner could use to submit his writ.   (Dkt. No. 9 at 6.)   In March of 2019, Petitioner sent a "serious letter" to Prior Counsel, "pleading for correspondence."   *Id.*   In April of 2019, Petitioner requested docket sheets from the district court, blank 11.07 writ forms from the Hidalgo County Court Clerk (with Petitioner noting that he

received no response regarding the blank forms), and a price quote for the trial transcript from A. Flores, Jr. *Id.* Also, in April of 2019, Petitioner sent a letter to obtain his "personal-property evidence packet" from his trial attorney, Fernando Mancias, though the letter was returned to Petitioner. *Id.* at 7. Petitioner also requested docket sheets from the Texas Court of Criminal Appeals in Corpus Christi, Texas. *Id.* In May of 2019, Petitioner requested docket sheets from the Texas Court of Criminal Appeals. *Id.* In August of 2019, Petitioner's Indiana friend tried to phone Mr. Mancias and Petitioner's friend Wayne Pieper in Edinburg to get the evidence packet. (Dkt. No. 9 at 7.) In October of 2019, Petitioner's Indiana friend again calls Attorney Mancias to inquire about his evidence packet, though the number Petitioner used was disconnected. *Id.* Petitioner's Indiana friend contacted the State Bar of Texas to get Attorney Mancias' address and phone number, though Mancias did not answer. *Id.* Petitioner also asked his Indiana friend, by mail, to inquire about prosecutor Victoria Muñez, and was informed that she is no longer with the District Attorney's office. *Id.* In December of 2019, Petitioner's letter to Wayne Pieper was returned with a "No Forwarding Address" label. *Id.*

In February of 2020, Petitioner scheduled an appointment to visit the law library, but alleges this appointment was not honored due to him being "too late," therefore, Plaintiff was unable to get the Texas 11.07 writ forms. (Dkt. No. 9 at 7.) Petitioner also filed a motion to have Judge Guerra recused from judging Petitioner's 11.07 Writ since he was claiming she was biased. *Id.* at 7-8. Also in February of 2020, Petitioner filed his Texas 11.07 Writ of Habeas Corpus, on out-of-date forms supplied by TDCJ. *Id.* at 8; *see also* Dkt. No. 80-49 at 80-105. In March of 2020, Petitioner did several things: (1) requested § 2254 writ forms from the Pack Unit law library (Petitioner is given outdated forms); (2) submitted another request to the Pack Unit law library for a copy of service, which was referred to the State Law Library in Austin, (Petitioner classifies this

as "another dead[-]end for getting copies"); (3) sent a letter to federal court in McAllen, Texas requesting a current form to file a § 2254 writ, payment inquiry, and permission to file *pro-se*; (4) sent a letter of inquiry as to a new Texas writ form asking if it should be filed to replace the writ that he wrote on the outdated forms, (Petitioner received a reply in the form of documents with a sticky-note telling Petitioner to follow instructions)[10]; and (5) requested a second set of blank § 2254 forms from federal court.  *Id.* at 8.  In April of 2020, Petitioner's brother in Arizona sent the five-dollar fee to the U.S. District Court.  *Id.*

On May 15, 2020, Petitioner wrote to the Texas Court of Criminal Appeals to inquire about the 11.07 writ.  *Id.*  In May of 2020, Petitioner filed a second Texas 11.07 writ on updated forms to replace the writ done on the old forms.  *See* Dkt. No. 9 at 8; *see also* Dkt. No. 8-51 at 111-38 (Unsworn Declaration executed on May 14, 2020; application received by Hidalgo County Clerk on June 16, 2020).  On May 29, 2020, Petitioner asked the Hidalgo County Court Clerk to see if they had received the second 11.07 writ, as no acknowledgment of receipt had come yet.  *See* Dkt. No. 9 at 9; *see also* Dkt. No. 8-51 at 180-82 (Letter dated May 29, 2020; received by County Clerk on June 16, 2020).  Petitioner asked this same question in June of 2020.  (Dkt. No. 9 at 9.)

On June 23, 2020, Petitioner sent an amendment for his Texas 11.07 writ to the Hidalgo County District Clerk.  *See* Dkt. No. 9 at 9; *see also* Dkt. No. 8-43 (handwritten Motion for Leave to Amend received by the Court of Criminal Appeals on June 26, 2020). [11]  In August of 2020, Petitioner (1) sent a letter to trial counsel, Mancias, requesting the evidence packet[12], and (2) sent

---

[10] *See* Dkt. No. 8-49 at 126-28 (Letter directed to Hidalgo County Clerk dated March 26, 2020).

[11] *See also* Dkt. No. 8-42 at 25-37 (handwritten Motion to Amend Writ received by County Clerk on September 21, 2020).

[12] *See* Dkt. No. 8-49 at 131 (handwritten Motion to Compel trial counsel to produce personal packet received by County Clerk on May 12, 2020).

a letter to the Hidalgo County District Clerk requesting a copy of the trial transcript which was necessary for the writs but for which Petitioner could not afford the $1,289 cost.   (Dkt. No. 9 at 9.)   Petitioner received no response from the County Clerk and received a "Return to Sender" notice regarding the Mancias letter.   *Id.*   In September of 2020, Petitioner's brother sent $87 to an investigator in Michigan to investigate suspects in the case "that attorney delinquently did not investigate."   *Id.*   Petitioner was not allowed to see the investigative reports and Petitioner's brother lost the reports, though "they have the receipts."   *Id.*   In October of 2020, Petitioner asked the investigator to get with his Indiana friend about the investigations.   *Id.*   And Petitioner, as of October of 2021, "is still waiting" to hear about that.   (Dkt. No. 9 at 9.)   In November of 2020, Petitioner did not have any luck asking the Court reporter for his trial transcript at a reduced price. *Id.*

In 2021, Petitioner continued to "discover information related to the investigations of his case that Attorney Mancias never bothered to pursue."   (Dkt. No. 9 at 9-10.)   Petitioner continues, "Through Barkan Research in Michigan, they tried to find information on Pablo Fay, who'd written fra[u]dulent checks against Petitioner's bank account, checks which were stored in locker #76."   *Id.* at 10.   Barkan Research was unable to find any information on the alleged 50 aliens that were squatting on Petitioner's land, where Petitioner stored the key(s) to locker #76 and the gate's passcode.   *Id.*   Additionally, "Petitioner continued trying to get friends from Indiana and Sweden to contact the attorneys and do other research for the case."   *Id.*

In April of 2021, Petitioner received notice from the Texas Court of Criminal Appeals that his State Writ was denied.   (Dkt. No. 9 at 10.)   Petitioner mailed his § 2254 writ to the District Court in McAllen, Texas "within a couple of days."   *Id.*   "Due diligence on Petitioner's part made sure [the § 2254 writ] was ready to send."   *Id.*   Petitioner classifies the preceding as "limited

opportunities for due diligence." (Dkt. No. 9 at 11.) Petitioner goes on to detail how Attorney

Mancias' failure to provide Petitioner with the "evidence packet" was "a most serious bre[a]ch of

ethics." *Id.* Further, Petitioner asserts that "[t]hree legal people familiar with the case have

stated that the prosecutor at trial did not prove her case." *Id.* He continues, "By using emotion

and deceit and by having an adversarial attorney, Petitioner never had a fair chance in Court." *Id.*

at 11-12. Petitioner excuses his lack of documents to support verification of his assertions by

stating he lacked access to copy services, but "Petitioner has original proofs to show if need be."

*Id.* at 12. In Petitioner's conclusion, Petitioner claims "extraordinary circumstances have

occurred when on April 3, 2020, Pack Unit went on full lockdown due to Covid-19 deaths." *Id.*

Petitioner says he "did what he could but was seriously thwarted by conditions in the prison and

by inabilities of friends outside the prison who were trying to help" as well as a brother who had

a stroke, was "left hemiplegic"[13] and is "very limited physically and mentally for any great

helpfulness." (Dkt. No. 9 at 12.) Petitioner prays for the Court to "honor this Answer and grant

Petitioner's Writ in whole or in part and either acquit or remand for a new trial." *Id.* at 12-13.

## APPLICABLE LAW & ANALYSIS

### I. Summary Judgment Review

Respondent has formally filed a Motion for Summary Judgment. (Dkt. No. 7.) Summary

judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any

material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Once the movant for summary judgment presents "a properly supported motion for summary

judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence'

---

[13] Hemiplegia is a condition caused by brain damage or spinal cord injury that leads to paralysis on one side of the body. *Hemiplegia*, Oxford English Dictionary, https://www.oed.com/view/Entry/85829?redirectedFrom=hemiplegia#eid (last visited October 20, 2021).

that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted).   Within this review, a district court must generally construe disputed facts in a light favorable to the nonmoving party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   In the context of a habeas petition, however, the applicant bears "the burden of rebutting the presumption of correctness [of the state court's factual determinations] by clear and convincing evidence."   § 2254(e)(1).

The Federal Rules of Civil Procedure apply so long as there is not a conflict with the federal rules governing habeas proceedings.   *Banister v. Davis*, 140 S. Ct. 1698, 1705 (2020) (citing Fed. R. Civ. P. 81(a)(4) and Rule 12 of Rules Governing § 2254 Cases).   Therefore, these claims are reviewed pursuant to Fed. R. Civ. P. 56(a) unless there is a noted conflict with the Federal Rules Governing § 2254 Cases.

## II. 28 U.S.C. § 2254

An application for a writ of habeas corpus by a person in custody under the judgment of a state court can only be granted on grounds that he is in custody in violation of the Constitution or laws of the United States.   28 U.S.C. § 2254(a).   Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence."   *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).   Relief, therefore, is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A), (c).  The exhaustion requirement "is grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quotation marks and citations omitted).  The rule has been "[c]odified since 1948 in 28 U.S.C. § 2254" and "while not a jurisdictional requirement [the rule] creates a strong presumption in favor of requiring the prisoner to pursue his available state remedies." *Id.* (quotation marks, internal citations and footnote omitted).  When a petitioner has properly raised a federal constitutional claim before the state courts, "and the state courts have adjudicated the merits of their merits, AEDPA provides for a deferential federal review." *Ramey v. Davis*, 314 F. Supp. 3d 785, 802 (S.D. Tex. 2018).

If a petitioner fails to adequately set forth the claim for review before the state court, said petitioner has not exhausted his state remedies and is precluded from bringing forth the claim for the first time in federal court.  *See* 28 U.S.C. § 2254(b)(1).  Similarly, if the claim is reviewed but the state court rejects on procedural grounds, the claim is also barred from federal habeas review.  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  However, the federal bar of review in each instance can be set aside if the petitioner can establish "cause" for the noted default and "actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"While 'the Framers considered the writ a vital instrument for protection of individual

liberty,' . . . federal courts traditionally rely on principles of finality, comity, and federalism to narrow the scope of federal habeas review."   *McGowen v. Thaler*, 717 F. Supp. 2d 626, 637 (S.D. Tex. 2010) (quoting *Boumediene v. Bush*, 553 U.S. 723, 743 (2008)).

Likewise, the application must also be timely filed.

### III. Statute of Limitations and Equitable Tolling

AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court.   28 U.S.C. § 2244(d)(1).   In most cases, the one-year limitation period runs from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C. § 2244(d)(1)(A).[14]

In the present action, Petitioner was sentenced to a cumulative total of 48 years' imprisonment.   Petitioner timely appealed and his conviction was affirmed on October 13, 2016. On February 1, 2017, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review.   The language of § 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."   The "conclusion of direct review" occurs when the Supreme Court either rejects the petition for

---

[14] The complete limitations are codified at 28 U.S.C. § 2244(d)(1) as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of–
   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

certiorari or rules on its merits. *Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009); *see also Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Or, if no petition for certiorari is filed, judgment becomes final by "the expiration of the time for seeking such review." *Roberts* at 694 (quoting § 2244(d)(1)). Consequently, Petitioner's judgment became final on May 2, 2017, which marked the expiration of the 90-day period in which Petitioner could have sought further review with the Supreme Court.

Absent any tolling, the AEDPA one-year limitation period expired on May 2, 2018, and Petitioner's present petition, submitted April 13, 2021 (Dkt. No. 1), comes nearly three years too late. In Petitioner's federal habeas application and Petitioner's Response, Petitioner raises arguments suggesting he is entitled to statutory and equitable tolling. Accordingly, the possibility of both statutory tolling, pursuant to 28 U.S.C. § 2244(d)(1)(A-B), and equitable tolling will be considered.

### a. **Statutory Tolling**

AEDPA establishes a one-year limitation period for state prisoners to file for federal habeas relief, which "run[s] from the latest of" four specified dates. 28 U.S.C. § 2244(d)(1)(A-D). Petitioner puts forth grounds for statutory tolling pursuant to § 2244(d)(1)(A) and § 2244(d)(1)(B). Petitioner does not claim or suggest he is entitled to statutory tolling under either § 2244(d)(1)(C) or § 2244(d)(1)(D), so those provisions will not be addressed in the following analysis.

### i. **28 U.S.C. § 2244(d)(1)(A)**

Petitioner states, "To address the Texas claim that Petitioner's 2254 writ is time barred, the rules on when tolling stops and starts is too confusing to follow." (Dkt. No. 9 at 4.) Although Petitioner is not necessarily making an argument on the grounds of 28 U.S.C. § 2244(d)(1)(A), since this statutory provision is applicable, an explanation of it is warranted.

Under § 2244(d)(1)(A), the one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Petitioner's judgment became final on May 2, 2017, ninety days after his PDR was refused. *See* 28 U.S.C. § 2244(d)(1)(A); *see also* U.S. Sup. Ct. R. 13(1). Accordingly, absent tolling, the period for filing a federal habeas petition expired on May 2, 2018. Consequently, Petitioner cannot now bring this federal habeas corpus action, submitted to officials on April 13, 2021.

### ii.   28 U.S.C. § 2244(d)(1)(B)

Petitioner implies there may have been State action preventing Petitioner from filing his state habeas application, thus supporting his right to statutory tolling. (Dkt. No. 1-1 at 10.) Petitioner claims his present incarceration constituted an impediment to him filing the present action by stating, "Inmates don't have access to all the dates or information and cannot consult any knowledge based on a computer: no access." (Dkt. No. 9 at 4.)

Pursuant to § 2244(d)(1)(B), the one-year limitation period may begin to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."

Petitioner's present incarceration is not enough to justify statutory tolling pursuant to § 2244(d)(1)(B). Incarceration alone is not an impediment. To invoke statutory tolling under § 2244(d)(1)(B), a prisoner must show that: (1) he was subject to state action, (2) that violated the Constitution or federal law, and (3) prevented him from filing a timely petition. *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). Petitioner has been able to file two state applications for habeas relief and the present § 2254 petition for relief. Being incarcerated has not impeded

the petitioner in the state proceedings; therefore, under these circumstances, § 2244(d)(1)(B) is unavailable to Petitioner.  *See Felder v. Johnson*, 204 F.3d 168, 171 n.9 (5th Cir. 2000) (as cited in *Guzman v. Dretke*, No. CIV.A.3:05-CV-954-L, 2006 WL 36858, at *3 (N.D. Tex. Jan. 4, 2006), "where a petitioner filed his habeas petition prior to the date he alleges the state-created impediment was removed . . . , section 2244(d)(1)(B) is unavailable [to him]").

In sum, Petitioner fails to show that he was prevented from filing a petition by state action in violation of the Constitution or federal law.

### iii.  28 U.S.C. § 2244(d)(2)

Pursuant to § 2244(d)(2), the one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).  Petitioner's filed state writ of habeas corpus did not toll the limitation period.  Petitioner did not file his state application until, at the earliest, February 20, 2020[15], almost two years after the expiration of the limitation period on May 2, 2018.  *See* Dkt. No. 8-49 at 77; Dkt. No. 9 at 8.  Petitioner's state filing cannot toll the one-year limitation period because the period expired before Petitioner's state court proceeding began.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired" (emphasis original)); *see also Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) (same) (citing *id.*).  In effect, because the limitation period was not tolled by the state filing, Petitioner's § 2254 petition is barred by the AEDPA statute of limitations.

---

[15] This sentence states "at the earliest," because it is the date the Petitioner may have placed the state habeas application in the hands of a prison official, though Petitioner states he put the petition in the mailing system on February 21, 2020.  *See* Dkt. No. 8-49 at 77.  Similar to the rule governing submissions of federal habeas applications, state habeas applications follow the prison mailbox rule.  *Richards*, 710 F.3d at 578-79.

### b. **Equitable Tolling**

In his petition, Petitioner claims that, even if none of the § 2244(d) exceptions apply, his claims are entitled to equitable tolling because he has been pursuing his rights diligently and extraordinary circumstances prevented Petitioner from timely filing.  (Dkt. No. 9 at 12.)  To support the contention that he is entitled to equitable tolling, Petitioner relies heavily on a letter he received from his state appellate counsel to justify why it took him over two years to discover the status of his PDR.  (Dkt. No. 1-1 at 10; Dkt. No. 1-2 at 1-3.)  Petitioner argues for relief since he expected his Prior Counsel to notify him of the PDR decision, Prior Counsel said the decision may take two years, and Petitioner "continued to write Appellate Counsel, especially at holidays and to inform them of address changes."  (Dkt. No. 1-1 at 10; *see also* Dkt. No. 9 at 5-6.)  Petitioner states his counsel stopped responding, so after two years, Petitioner "wrote to the Austin Court and received back a shocking letter that the Court had refused the P.D.R. . . . just 28 days after Petitioner had received Counsel's last letter."  (Dkt. No. 1-1 at 10-11.)  Accordingly, Petitioner argues the lack of notification from the Court and his counsel "despite 10+ letters of due diligence" presents evidence sufficient to justify equitable tolling.  *Id.* at 11.

It is well-established that in appropriate circumstances AEDPA's one-year statute of limitations can be equitably tolled since the limitations are not considered a jurisdictional requirement for habeas review.  *Holland v. Florida*, 560 U.S. 631, 645-49 (2010).  "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  Regarding the "pursuing his rights diligently" requirement, Petitioner must demonstrate "'reasonable diligence,' not 'maximum feasible diligence.'"  *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013)

(quoting *Holland*, 560 U.S. at 653). "[N]either excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Id.* at 503 (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)).

Further, equitable tolling "is not intended for those who sleep on their rights." *Id.* (quoting *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012)). "Long delays in receiving notice of state court action may warrant equitable tolling." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). But, to warrant equitable tolling based on delayed notice, the petitioner must show that he pursued relief from his conviction "with diligence and alacrity *both before and after receiving notification.*" *Id.* (internal quotation marks and citation omitted) (emphasis added). "[E]quitable tolling is only available in 'rare and exceptional circumstances.'" *Jackson v. Davis*, 933 F.3d 408, 410 (5th Cir. 2019) (quoting *Hardy*, 577 F.3d at 598). However, "[a]s a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but [the court] draw[s] on general principles to guide when equitable tolling is appropriate." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

### i. Extraordinary Circumstances

Although Petitioner does not address "extraordinary circumstances" until he mentions the prison's Covid-19 lockdown in April of 2020 (Dkt. No. 9 at 12), the undersigned, out of an abundance of caution, will also address the "very severe problems" the Petitioner complains of, to the extent they can be liberally construed as extraordinary circumstances. (Dkt. No. 9 at 3-4.) Petitioner states, he was "seriously thwarted by conditions in the prison and by inabilities of friends outside the prison who were trying to help." *Id.* at 12. Petitioner listed several factors unique to prison confinement affecting his ability to file writs: (1) no access to information about the filing requirements, time frames to said filings, or instructions on how to do so; (2) toxic law library

conditions, including outdated state and federal habeas forms and no law library help; (3) no access to a telephone or copy services for exhibits; and (4) difficulty completing filings with a work schedule resulting in drafting the petitions in "disruptive" conditions. *Id.* at 3-4.

Petitioner also states he could not obtain the evidence packet from his state trial attorney, Mancias, or afford a copy of his trial transcript. *Id.* at 7, 9. Petitioner further argues that his unit's inadequate law library contributed to his late filing, because he did not have access to updated forms, one time he was not let into the library despite having an appointment, and there was no access to the law library for many months due to Covid-19. *Id.* at 3, 7. In addition, Petitioner claims he missed the initial filing deadline for his state writ application due to lack of notification regarding his PDR denial. (Dkt. No. 1-1 at 10-11.)

### (1) Conditions of Prison Confinement and Lack of Law Library Access

Generally, conditions unique to prison confinement do not qualify as extraordinary circumstances. *Madis v. Edwards*, 347 F. App'x 106, 108 (5th Cir. 2009) (citing in part *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D. N.Y. 2002) ("[T]ransfers between prison facilities, solitary confinement, lockdowns, and restricted access to the law library do not qualify as extraordinary circumstances warranting equitable tolling."). Ignorance of the law and lack of knowledge about filing deadlines and how to file documents, even with a petitioner's *pro se* status, do not indicate entitlement to equitable tolling. *See Felder*, 204 F.3d at 171–72 (as cited in *Garrett v. Dretke*, 3:01-CV-02677-P, 2003 WL 22862679, at *2 (N.D. Tex. 2003), "noting that ignorance of the law, lack of knowledge of filing deadlines, a prisoner's pro se status, illiteracy, deafness, lack of legal training, and actual innocence claims do not support equitable tolling of the AEDPA statute of limitations"). Neither does lack of access to a telephone nor copy services for exhibits. *Ramirez v. Yates*, 571 F.3d 993, 997-1001 (9th Cir. 2009) (holding a petitioner's limitations on access to a

law library and copier are not extraordinary and do not make timely filing an impossibility).   Also, a petitioner's assertion that he could not obtain a copy of the transcript or retrieve his evidence packet to prove his allegations does not entitle a petitioner to equitable tolling.   *Kiser v. Dretke*, No. CIV.A. 4:04-CV-0494-, 2004 WL 2331592, at *2 (N.D. Tex. 2004), *report and recommendation adopted*, No. CIV.A. 404cv494Y, 2004 WL 2549174 (N.D. Tex. 2004) ("Difficulty obtaining records and lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction habeas relief and, thus, do not present exceptional circumstances that warrant equitable tolling."); *Brown v. Dretke*, No. 3:02-CV-1186-R, 2004 WL 60266, at *2 (N.D. Tex. 2004) (stating unfamiliarity with the legal process, difficulty in obtaining records, and lack of money to pay for copies are common problems among inmates who are trying to file a habeas petition and none of these reasons are exceptional circumstances warranting equitable tolling).

Further, a petitioner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a claim." *Krause v. Thaler*, 637 F.3d 558, 561 (5th Cir. 2011) (emphasizing the prisoner must factually demonstrate that the subpar library or access thereto actually prevented him from timely filing his petition).   "[A]n inadequate law library does not constitute a 'rare and exceptional' circumstance warranting equitable tolling." *Egerton*, 334 F.3d at 437 (citing *Scott*, 227 F.3d at 263 n.3).

Petitioner has failed to allege how his conditions of prison confinement or the inadequacy of his unit's law library created extraordinary circumstances or prevented him from filing a timely federal habeas application.   To the extent Petitioner argues his federal habeas application is late because he had to submit his state habeas form on an outdated petition, the argument fails.   It is true Petitioner filed his state habeas petition on an outdated form.   However, despite the trial court

recommending the writ application be dismissed as non-compliant with Rule 73.1 of the Texas Rules of Appellate Procedure, the Texas Court of Criminal Appeals found Petitioner to be compliant with the rules. Therefore, the outdated form itself did not interfere with Plaintiff's filing.[16]   (Dkt. No. 8-40 at 2.)

Further, Petitioner does not demonstrate how the lockdowns due to Covid-19, including limited access to the law library, prevented Petitioner from timely filing.   The Covid-19 lockdowns in Petitioner's unit in April of 2020 came after Petitioner had already taken nearly a year to file his state writ in February of 2020, over three years after his PDR was denied.   (*See* Dkt. No. 9 at 8, 12.)   Accordingly, Petitioner does not show that his conditions of prison confinement or the inadequacy of his unit's law library caused extraordinary circumstances warranting equitable tolling.

### (2) Lack of Notification of PDR Denial

Petitioner claims the reason he missed the initial filing deadline for his state writ application was the Texas Court of Criminal Appeal's and Prior Counsel's failure to notify him of the PDR denial.   (Dkt. No. 1-1 at 10-11.)   Still, Petitioner waited two years before inquiring about the status of the PDR with the Texas Court of Criminal Appeals; instead, over a two-year period, Petitioner solely wrote to unresponsive Prior Counsel asking about the PDR's status.   (Dkt. No. 1-1 at 10; *see also* Dkt. No. 9 at 5-6.)   Petitioner claims this was due to reliance on Prior Counsel's assertion that his PDR could take up to two years to resolve.   (Dkt. No. 1-1 at 10.)   Accordingly, the undersigned will analyze whether Petitioner, considering Prior Counsel's alleged abandonment, faced an extraordinary circumstance.

---

[16] If Petitioner's state writ had been found to be non-compliant with Rule 73.1 of the Texas Rules of Appellate Procedure because it was on outdated forms, then Petitioner's first state writ would not have been a "properly filed state action" as is required under 28 U.S.C. § 2244(d)(2) to toll the limitations period.

In *Maples v. Thomas*, the Court held, "[A] client [cannot] be faulted for failing to act on his own behalf when he *lacks* reason to believe his attorneys of record, in fact, are not representing him." 565 U.S. 266, 283 (2012) (emphasis added).   In that case, Maples "*through no fault of his own,* [] lacked the assistance of any authorized attorney during the 42-day appeal period.   And he had *no reason to suspect that*, in reality, he had been reduced to *pro se* status." *Id.* at 289 (emphasis added).

Whether Petitioner had reason to suspect he had been reduced to *pro se* status is debatable. Petitioner, unlike the petitioner in *Maples*, likely had reason to believe his attorneys of record, Prior Counsel, were not representing him in regard to the state or federal writ.   Initially, Petitioner's alleged correspondence to Prior Counsel was reasonable—Prior Counsel did promise Petitioner they would contact him with the results of the PDR decision, and, if the PDR was denied, they would give Petitioner a more thorough overview of the state writ process.   (Dkt. No. 1-2 at 3.)   However, at some point, it is unreasonable for Petitioner to rely solely on Prior Counsel's promise in finding out if a PDR decision had been made.

And while it is true Prior Counsel's letter did include a promise to follow-up with Petitioner, the letter also told Petitioner, in no uncertain terms, that Prior Counsel's representation would end if the PDR was denied.   (Dkt. No. 1-2 at 1-2.)   Prior Counsel even included a list of other attorneys for Petitioner to contact to pursue the state writ.   *Id.* at 1-2.   Yet, Petitioner is adamant he believed he still had counsel during these two years because Prior Counsel had told him (1) the PDR decision could take up to two years, (2) Prior Counsel would represent Petitioner if his PDR was accepted, and (3) Prior Counsel would follow-up with Petitioner in the event of either a PDR acceptance or denial.   (Dkt. No. 9 at 4; Dkt. No. 1-2 at 3.)   Petitioner's assertion is supported by the fact that, after a two-year period of silence, Petitioner relinquished his conviction

that Prior Counsel might someday respond and instead wrote directly to the Texas Court of Criminal Appeals. (Dkt. No. 9 at 6; Dkt. No. 1-2 at 4.) Still, upon failing to receive responses from Prior Counsel and based on the facts outlined in the letter, Petitioner had reason to suspect that he had been reduced to *pro se* status. *Cf. Maples*, 565 U.S. at 288-89. Notwithstanding the foregoing facts, because Petitioner cannot satisfy the diligence requirement, Petitioner is not entitled to equitable tolling.

### ii. Diligence

Assuming Petitioner faced an extraordinary circumstance preventing him from timely filing due to his reliance on Prior Counsel's statements, the undersigned will address the alternate prong of the equitable tolling requirements—diligence. After receiving notification of his PDR denial on, at latest, March 1, 2019, Petitioner did not file his first state application until on or after February 20, 2020. (Dkt. No. 9 at 8; Dkt. No. 8-49 at 77.) Petitioner, who had up to that point submitted many filings, knew the importance of court deadlines, yet when it came to his state writ, Petitioner was apparently unprepared for over two years, ultimately resulting in a late federal writ application. As such, even if the Court were to assume Petitioner's reliance on Prior Counsel's notification of the PDR denial for the two years was reasonable, Petitioner still would have failed to demonstrate diligence *after* the PDR notification. *See Hardy*, 577 F.3d at 598 (stating a petitioner must pursue his rights both before and after delayed notification); *see also Manning*, 688 F.3d at 184 n.2 (noting that "attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes, but does not, by itself, excuse the petitioner from his duty of diligence.")

Since Petitioner waited almost a year to file his state application after receiving notice two years after the Texas Court of Criminal Appeal's PDR decision, Petitioner waited too long to

justify equitable tolling. *See Manning*, 688 F.3d at 185 (noting in a case where petitioner did nothing for the nineteen months after his judgment became final that the Fifth Circuit was unaware of "any other decisions holding . . . that such an extended period of inactivity constitutes due diligence under AEDPA."); *see also North v. Davis*, 800 F. App'x 211, 214-15 (5th Cir. 2020) (finding an "eleven-month delay in filing his initial state application weighs against a finding of diligence," and citing *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010), "affirming the denial of equitable tolling where, *inter alia*, the petitioner had waited seven months to file his state application."). Petitioner's state application for habeas, filed in February of 2020, is not enough to show diligence because it came nearly a year after Petitioner allegedly discovered the result of his PDR on March 1, 2019. *See* Dkt. No. 9 at 6, 8; *see also Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013) (noting that a defendant waiting seven months to hire an attorney after learning their PDR was denied shows a lack of reasonable diligence).

Petitioner cannot rely on the excuse that his reliance on Prior Counsel's advice to "not hurry" in drafting the habeas petition caused his unreasonable delay in filing. Primarily, while it is true that Barthelman had a right to appellate counsel's effective assistance during direct review, he had no right to their effective assistance regarding habeas relief. *See Miranda v. Castro*, 292 F.3d 1063, 1068 (9th Cir. 2002). So, to the extent Barthelman can claim that since Prior Counsel undertook the responsibility to notify him of the PDR decision, he had a right to their effective assistance regarding post-conviction relief, this argument is foreclosed by *Miranda v. Castro*. *See* 292 F.3d at 1068. The petitioner in *Miranda* put forth a similar argument to Barthelman's, stating, "[A]ppellant counsel has no duty to advise a client regarding the availability of state or federal habeas relief," however, when counsel undertakes to offer such advice, "it must be accurate." *Id.* The court held, "Our precedents foreclose this contention: because Miranda had no right to the

assistance of his appointed appellate counsel regarding post-conviction relief, it follows that he did not have the right to that attorney's 'effective' assistance, either." *Id.*; *see also Manning*, 688 F.3d at 185 (same).

Further, Prior Counsel's arguably unsound advice is, at worst, negligence.[17]  *Cf. Miranda*, 292 F.3d at 1068 (where the "attorney's miscalculation of limitation period . . . and [attorney's] negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." (internal quotations and citation omitted)).   Under Fifth Circuit precedent, such "error or neglect is not an extraordinary circumstance" that justifies equitable tolling.  *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) ("Many courts have considered the question whether attorney error constitutes 'rare and exceptional circumstances' and have held that it does not." (citations omitted)).   As such, Prior Counsel's negligence would be attributed to Petitioner, and Petitioner could not demonstrate an extraordinary circumstance that excused Petitioner's lack of diligence.

In sum, the record reflects Petitioner did not pursue his rights with reasonable diligence. Without more, equitable tolling does not apply.   Therefore, his petition should be dismissed with prejudice.

## IV.    Actual Innocence as a Basis for Habeas Review

Petitioner asserts he "has been falsely convicted of made-up crimes by a prosecutor and law enforcement."  (Dkt. No. 9 at 2.)  Petitioner states this is a "miscarriage of justice."  *Id.* "Petitioner never promoted child pornography or possessed child pornography, but locker #76 was available to multiple people while Petitioner was overseas working for four-years [sic] (2008-

---

[17] This advice could easily have been misconstrued to mean something other than its contextual significance, as in the present instance.   Prior Counsel's encouragement to Petitioner not to be in a hurry, taken in context, meant Petitioner should not sacrifice thoroughness and accuracy for speed in submitting his state writ application; they were not encouraging Petitioner to "sleep on his rights."  *See Manning*, 688 F.3d at 183.

2012)." *Id.* Liberally construed, Petitioner is claiming actual innocence as an exception to the AEDPA time limitations.

A claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitation period has elapsed. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, "tenable actual innocence gateway pleas are rare." *Id.* To meet the threshold requirement and "invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, an actual innocence claim requires a petitioner to support allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. Further, an "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399. In other words, "[a] court may consider how the timing of the submission and the likely credibility of a [petitioner's] affiants bear on the probable reliability of … evidence [of actual innocence]." *Id.* at 399 (quoting *Schlup*, 513 U.S. at 332). Thus, a court can consider "a petitioner's diligence, not discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.* at 400. This standard under *Schlup* is "demanding" and "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

Here, Petitioner does not provide new evidence. Although Petitioner claims to have paid an investigator in Michigan to "inquire of suspects in the case," Petitioner's brother lost the reports

and, after Petitioner asked the investigator "to get with [his] Indiana friend about the investigations," as of October of 2021, Petitioner had not yet heard back.  (Dkt. No. 9 at 9.) Further, Petitioner states, "Barken [Research] was unable to find out information about the 50 Mexican aliens from U.S. Border Patrol, aliens who had been squatting on Petitioner's land wherein was stored the key(s) to locker #76 along with the gate's passcode." *Id.* at 10.  And finally, Petitioner claims "three legal people familiar with the case have stated that the prosecutor at trial did not prove her case," though, there are no copies of the "originals" to verify this statement. *Id.* at 11-12.

This is not one of the rare cases in which an actual innocence exception should apply as there is no proffered evidence calling into question the outcome of the trial.   Accordingly, Petitioner is not entitled to habeas review based on his claim of actual innocence.

**V. Petitioner's Claims**

Courts are encouraged to resolve procedural issues before reaching the merits of a habeas claim.  *See United States v. London*, 937 F.3d 502, 509-10 (5th Cir. 2019) (Costa, J., concurring) (noting that the Supreme Court encourages "courts to 'first resolve procedural issues' before answering constitutional questions") (quoting *Slack v. McDaniel*, 529 U.S. 473, 485 (2000)). Petitioner has raised ten grounds for review in his federal habeas writ.  *See* list *supra* Section II: Summary of the Pleadings at 5-6, ¶ 1.  However, considering that there is no basis for statutory or equitable tolling, and because this § 2254 petition comes almost three years after judgment became final for review, Petitioner's claims of errors by the Appellate Court, prosecutors, and defense counsel, ineffective assistance of counsel, judge impartiality, prosecutorial misconduct and evidence seized without a warrant, are all time barred from review without a need to reach the merits of said claims.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, Petitioner's claims are barred by the relevant statute of limitations and are not subject to equitable tolling or a demonstrative claim that failure to consider the underlying claims will result in a fundamental miscarriage of justice; therefore, the undersigned recommends Respondent's Motion for Summary Judgment (Dkt. No. 7) be **GRANTED**.   Accordingly, it is recommended that Petitioner's § 2254 petition (Dkt. No. 1) be **DENIED** and this cause of action be **DISMISSED** with prejudice.

Finally, Petitioner's § 2254 case should be closed.

### *Certificate of Appealability*

The undersigned recommends that the District Court deny a Certificate of Appealability. Petitioner may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).   The § 2254 rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Gov. Sec. 2254 Cases 11.   Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability ("COA").

A COA "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   When a claim is denied on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *see also United States v.*

*Jones*, 287 F.3d 325, 329 (5th Cir. 2002).   A petitioner may satisfy this requirement by showing, in the alternative, that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Jones*, 287 F.3d at 329.   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's request to overcome the timely filing of the habeas petition is being denied for none of the statutory exemptions to the one-year limitation apply, equitable tolling is inapplicable, and Petitioner cannot establish a miscarriage of justice based on claim of actual innocence.   Reasonable jurists would not find it debatable that Petitioner has not set forth a valid claim of denial of a constitutional right or that the court was incorrect in its procedural ruling as to each of the claims being time-barred from habeas review.

Therefore, it is recommended that the District Court deny a COA.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Petitioner and counsel for Respondent.

**DONE** at McAllen, Texas, this 25th day of January, 2022.

Juan F. Alanis
United States Magistrate Judge